IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

**OCT 23 2000**

Michael N. Milby, Clerk

| | | |
|---|---|---|
| CHRISTOPHER E.P., b/n/f | § | |
| ROSE V. | § | |
|       Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO: C-00-021 |
| | § | |
| CORPUS CHRISTI INDEPENDENT | § | |
| SCHOOL DISTRICT AND CITY OF | § | |
| CORPUS CHRISTI, TEXAS | § | |
|       Defendants. | § | |

**PLAINTIFF'S RESPONSE WITH AUTHORITIES TO DEFENDANT CORPUS
CHRISTI INDEPENDENT SCHOOL DISTRICT'S
MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

      COMES NOW, Plaintiffs Christopher E.P., b/n/f Rose V. and respectfully file and submit

this their Response to the Corpus Christi Independent School District's Motion for Summary

Judgment and would show as follows:

## I. BASIS FOR MOTION

1.    Defendant, Corpus Christi Independent School District's [hereinafter CCISD], is not

entitled to judgment as a matter of law and further, genuine and material fact issues exist

concerning the reasonable accommodation of Christopher E.P. into the Latchkey "after-school"

Program which preclude summary judgment in favor of Defendant. This response is very similar

in content to Plaintiffs' response to the City of Corpus Christi's Motion for Summary Judgment.

## II. SUMMARY OF FACTS

2.    Plaintiff is a twelve-year-old boy with multiple disabilities. More specifically, Plaintiff

has Cri-Dy-Chat Syndrome, a form of mental retardation. Plaintiff is eligible for and receives

special education services from Defendant CCISD.

3.      Plaintiff was previously enrolled in the 5th grade at Galvan Elementary School within CCISD.  Plaintiff applied to participate in CCISD's after-school care program at that school which is called the Latchkey Program.  Eligible children for this program include those students who attend Galvan Elementary School (Exhibit "1").  The Latchkey Program is jointly provided by the Parks and Recreation Department of the City of Corpus Christi (hereinafter "City") and CCISD.  Pursuant to an agreement between CCISD and the City, CCISD provides buildings, playground facilities, utilities and janitorial services for the Latchkey Program (Exhibit "2").  The Parks and Recreation Department for the City administers the Latchkey Program.  Both Defendants are general recipients of federal funding and are public entities, although the Latchkey Program is now funded by both parental payment and federal subsidies.

4.      On numerous occasions, Plaintiff has requested through his mother that he be allowed to participate in the Latchkey Program offered on the campus of the school that he attended.  As part of his participation in the program, and as a condition required by the administration because of the Plaintiff's disability, Christopher E.P. must have additional supervision assigned to him during the time that he is attending the program (see Exhibit "3", Request for Special Accommodation).  Plaintiff already receives the assistance of a paraprofessional when he is attending school during regular hours, but not thereafter.  In spite of Plaintiff's numerous requests, Defendants have refused to allow Plaintiff to participate in the Latchkey Program unless his mother provides an adult assistant at her expense.

5.      As a result of Defendants' refusal to allow Plaintiff to attend the Latchkey Program, Plaintiff has brought this cause of action and alleges violations of The Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 et seq., (as to CCISD) the Rehabilitation Act of

1973, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (as to both Defendants in their capacity as public entities).

## III. ARGUMENT AND AUTHORITIES

### The Applicable Legal Standard for Summary Judgment

6.      Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment in any case in which " the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

### Defendants Have Discriminated Against Plaintiff on the Basis of his Disability and in Violation of the ADA

7.      Applicable law provides that Defendants must make reasonable modifications to the Latchkey Program to allow Plaintiff to participate in the program.  Title II of the ADA provides in pertinent part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.  To establish a violation of Title II, a claimant must demonstrate that: (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and (3) the exclusion, denial of benefits, or other discrimination, was by reason of his disability. *Layton v. Elder*, 143 F.3d 469 (8th Cir. 1998); *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421 (5th Cir. 1997).

8.      It is undisputed that as a result of Christopher E.P.'s severe mental retardation that he does not meet the published criteria for participation in the Latchkey Program.  Exhibit "1".  He

Page 3

is a "qualified individual" under the ADA and § 504, and it is his disability which precludes his participation (mental retardation, physical disabilities). He would otherwise be eligible because of his age and regular attendance at the Latchkey school site.

9.      Title II of the ADA defines public entities subject to the statute to include "any State or local government" as well as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Because the statutory definition of a public entity is so broad, both the City and CCISD fall within this definition.

10.     Title II of the ADA also defines a "qualified individual with a disability" who is entitled to the benefits of Title II as:

> An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). As to whether Plaintiff constitutes a "qualified individual with a disability," Plaintiff is a twelve-year-old boy with multiple disabilities, (See Affidavit of Rose Vasquez, which is attached hereto as Exhibit "5"). More specifically, Plaintiff has Cri-Dy-Chat Syndrome. *Id.* As a result of this condition, Plaintiff suffers from impaired motor skills and control. *Id.* Moreover, Plaintiff requires assistance from either his mother or a paraprofessional. *Id.* Plaintiff is eligible for and receives special education services from CCISD. *Id.* As part of those special education services, Plaintiff receives the assistance of a paraprofessional when he is attending school during regular hours. *Id.* Because Plaintiff suffers from impaired motor skills and control, he requires constant attention and already receives special education services. He constitutes a qualified individual with a disability under the ADA. Plaintiff, as a student enrolled

at a CCISD elementary school site with a Latchkey Program, would otherwise be eligible except for the limitations of his disability.

11.     Plaintiff has been denied the benefits of participation in the Latchkey Program because of his disability in violation of the ADA.  Although Plaintiff has made numerous requests to participate in the Latchkey Program, including one as recently as October of 1999 (see Exhibit "3"), the City (as administrator) has denied the requests or enforced restrictions that Plaintiff could not overcome because of his disability (mental and physical abilities of a five-year-old). *Id.*  Because Plaintiff has not been allowed to participate in the Latchkey Program, Ms. V. has arranged for private after-school care.  *Id.*  Ms. V. is a single mother who is employed as an office supervisor with Ear, Nose, and Throat Associates.  Her hours are 8:00 a.m. to 5:00 p.m. weekdays.  She has worked there for six years.

**Pursuant to the ADA, CCISD must allow Plaintiff to Participate in the Latchkey Program and Provide Additional Assistance or Supervision as a Reasonable Accommodation**

12.     Among the documents provided by CCISD as part of its initial disclosures is one entitled "Interlocal Cooperation Agreement Between the City of Corpus Christi and Corpus Christi Independent School District for the Latchkey Program" (hereinafter "Agreement").  (See Agreement, attached hereto as Exhibit "2").  According to the Agreement, the City jointly sponsors the Latchkey Program with CCISD as an after-school childcare and activities program for those elementary students who meet the program's participant guidelines and who attend schools with Latchkey sites during the school year.  *Id.*  Also pursuant to the Agreement, CCISD provides buildings, playground facilities, utilities, and janitorial services for the program and conducts site inspections to determine compliance with applicable safety codes.  *Id.*  Finally, in

providing building and playground facilities for the program, CCISD provides utilities including water, gas, electricity, and access to telephones for emergency calls, use of tables, chairs, TVs and VCRs, and access to restrooms and playground facilities. *Id.* The Agreement makes clear that substantial involvement from both the City and CCISD are necessary for the success of the Latchkey Program.

13.     With regard to whether Defendants are under a duty to allow Plaintiff to participate with assistance in the Latchkey Program, the federal agency charged with investigating discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act has previously concluded that similar defendants are under such a duty.  More specifically, the United States Department of Education, Office for Civil Rights (hereinafter "Agency") is the federal agency with responsibility under Section 504 of the Rehabilitation Act to ensure that recipients of federal funds do not discriminate against program beneficiaries on the basis of disability.  Further, under Title II of the Americans with Disabilities Act, the Agency has jurisdiction over complaints alleging discrimination on the basis of disability filed against public elementary and secondary education systems.  CCISD is a recipient of federal funding, see Exhibit "11", CCISD responses to discovery, interrogatory number 1.

14.     The Agency has issued at least two determinations, referred to as Letters of Findings, regarding after-school childcare programs and the responsibility for such programs to accommodate students with disabilities.  In *Conejo Valley (CA) Unified School District*, 23 IDELR 448 (OCR 1995), a copy of which is attached hereto as Exhibit "6", the Agency concluded that a parent funded after-school care program violated the Rehabilitation Act and Title II of the Americans with Disabilities Act when the program refused to serve a severely

disabled student. *Id.* Citing 28 C.F.R. § 35.164 and 34 C.F.R. § 104.38, which were promulgated under the ADA and the Rehabilitation Act respectively, the Agency noted that where a student meets the basic enrollment criteria of the child care program, the student is entitled to an equal opportunity to participate in the program except: (1) where to do so would place an undue financial burden upon the program, or (2) where to accommodate the student would constitute a fundamental alteration in the nature of the program. *Id.* In that instance, the Agency found that the fact that the student required a part-time aide at $8-$10 an hour did not constitute an undue financial burden when all resources of the program were considered. *Id.* Further, with an aide the student would be able to participate in the benefits of the after-school program by having a safe place to go after school. *Id.* Finally, the Agency concluded that allowing the disabled student to attend the after-school program would not be a fundamental alteration in the nature of the program. *Id.*

15.     In *Board of Education of the City of New York*, 16 EHLR 373 (OCR 1989), a copy of which is attached hereto as Exhibit "7", the Agency cited the school district for violating Section 504 of the Rehabilitation Act by refusing access to Latchkey Programs for students with severe disabilities. Although this finding was made prior to the passage of the Americans with Disabilities Act, the Rehabilitation Act was the precursor of the ADA and Rehabilitation Act cases provide precedent for the ADA. *Darian v. University of Massachusetts, Boston,* 980 F.Supp. 77 (D. Mass. 1997), *see also Layton v. Elder*, 143 F.3d 469 (8th Cir. 1998)(court noting that the rights, procedures and enforcement remedies under Title II of the ADA are the same as under Section 504 of the Rehabilitation Act). As to the Agency's finding, the Agency concluded that students with severe disabilities should be afforded an equal opportunity for meaningful participation in the Latchkey Program. *Board of Education of the City of New York*, 16 EHLR

373 (OCR 1989). In response to that finding, the district developed and implemented a policy

which provided information to parents of students with severe disabilities, offering them

opportunities to apply for the Latchkey Programs along with all other eligible students. *Id.*

16.     Both of the Letters of Findings establish that, pursuant to the ADA, public entities have

an obligation to provide access to Latchkey Programs for students with severe disabilities. The

Agency acknowledged that there are defenses to claims for denial of services for severely

disabled students including undue financial burden and fundamental alteration of the program.

The Agency concluded, however, that providing a part-time aid would not constitute either an

undue financial burden or a fundamental alteration to a Latchkey Program. Similarly, the size of

Defendants' Latchkey Program, as it is described in the Agreement between the Defendants,

indicates that providing Plaintiff with a paraprofessional so that he can participate in the

Latchkey Program would not be an undue financial burden for Defendants or a fundamental

alteration to the Latchkey Program.

**The Fact Issue Which Precludes Summary Judgment**

17.     An essential fact issue therefore exists concerning the reasonableness of the Plaintiff's

request for the assistance of an aid to supervise Christopher E.P. in order that he could participate

in the Latchkey Program along with other students from his school who are not otherwise

disabled (but may be receiving financial assistance in the form of a "scholarship"). At the

deposition of Daniel Whitworth, Assistant Director of Programs for the Park and Recreation

Department, City of Corpus Christi, he testified that the budget for the Latchkey Program was

$1.7 million dollars. His conclusory allegation that providing assistance to Christopher E.P.

would be an undue financial burden is not supported by his deposition testimony. True and

correct copies of deposition excerpts from his deposition conducted August 4, 2000 are attached

hereto as Exhibit "8". Mr. Whitworth testified as follows:

> "Q:   . . . why was it determined that the program would
>
>        not be all inclusive of all children enrolled in
>
>        CCISD?
>
> A:    I don't have an answer for that question.  I don't –
>
>        we set out the program parameters for the program
>
>        that we were offering.
>
> Q:    Okay.  Well, then it is your understanding, or do
>
>        you know this, that there are children who have the
>
>        same needs in terms of an after-school program that
>
>        aren't eligible for the Latchkey Program?
>
> A:    Yes, I know there are kids out there like that, um-
>
>        hum.
>
> Q:    Do you know how many children there are out
>
>        there?
>
> A:    I have no idea.
>
> Q:    Do you know why it was decided that not every
>
>        child enrolled in CCISD would be eligible to
>
>        participate in this Latchkey Program?
>
> A:    One of the decisions was that this is a fee-based
>
>        program.  The participants pay for the program.  We
>
>        go by our license guidelines as far as staff to

participate ratio, that is laid out in the license, and we try to structure the fee schedule so that we can do that. And so our guidelines are compatible with those staffing requirements and our abilities with revenues.

Q:     What would it cost you to make the program all-inclusive?

A:     I don't know. That's not the program that we are offering. I have never attempted to work out a budget for that.

Q:     What would be the additional cost – or excuse me – is it your testimony that this program cannot be made all-inclusive?

A:     You would have to give me some more information before I could answer that question. Under the guidelines that we have set and the fee structure that we have set, I would think it could not be.

Q:     What financial information was considered about the increased cost of making this program all-inclusive?

A:     I don't know that we ever tried to make that determination.

> Q:     What additional benefit would there be to the
>        children who are eligible for the program, as it
>        stands now, to be involved with children with
>        disabilities that are not eligible?
>
> A:     I don't know how to answer that.
>
> Q:     Was that a consideration?
>
> A:     No."

Whitworth deposition, Exhibit "8", pp. 33-35.

18.     Similarly, Sonja West, (CCISD employee and LatchKey Program liason) testified as

follows:     (beginning page 9, line 22)

> "Q:     What is your recollection as to the cost?  I'm not asking
>         you what it is, but what do you recall the cost?
>
> A:      I would recall around – for a year's worth of a school year
>         program, Latchkey Program, our utility costs, custodial
>         costs, incurred costs without specific line items budgeted,
>         would have been around 800,000, I believe.
>
> Q:      So, in effect, by participating in the Latchkey Program with
>         the city, or allowing the Latchkey Program to operate on its
>         premises, the district subsidizes that program indirectly,
>         maybe up to $800,000?
>
> A:      I would suggest it is not subsidizes.  We just incur costs,
>         utility costs for the program as we would any other
>         program that has asked for that option with us.

Page 11

Q:     Are those costs passed on to the city?

A:     No."

(continuing on page 19, line 21)

"Q:     Let me think.  We can wrap this up.  Given that the city

budget is 1.7 million for this program, and the school

district contributes roughly 800,000, that's $2.5 million for

the program, do you know whether the cost of

accommodating this child into the program would create an

unnecessary financial burden on the program?

A:     I do not know.

Q:     Do you know if that determination has ever been made?

A:     On this particular case?

Q:     Yes.

A:     No, I did not know, but I would assume not.

        MR. CASSIDY:  All Right.  Thank you.  That's all I have."

West deposition, Exhibit "10".

19.     Based upon the foregoing testimony, it is clear that the CCISD cannot meet its burden of

proving that providing a paraprofessional to Christopher E.P., to allow him to participate with

non-disabled students, would constitute an undue financial hardship on the program, or a

fundamental alteration in its essential purpose.  28 C.F.R. § 35.150 (a)(3).  This is particularly

evident by the City's admission that as many as 40% of all students participate on a scholarship

or "no fee" basis.  Whitworth affidavit, p. 2.  Why couldn't the City and CCISD grant

Christopher E.P. a "scholarship" in the form of an aid?  Ms. V., who is willing to pay on the

same basis as other parents, should not have to bear additional costs solely because of her child's disability.

## Sec. 504 is Applicable to CCISD

20.     The Rehabilitation Act is applicable to the City and CCISD because CCISD is a recipient of federal funding pursuant to 34 C.F.R. § 104.2 (application) and 34 C.F.R. § 104.37 (non-academic services) "A recipient to which this subpart applies shall provide non-academic and extracurricular activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities". Further, 34 C.F.R. § 104.4(b)(1)(v) prohibits a recipient from participating in such discrimination. The use of CCISD facilities is significant assistance in this regard, and creates a substantial relationship with the city as the "Latchkey" administrator. See generally, *Irvine Unified School District*, 19 IDELR 883 (1993) (attached hereto as Exhibit "9"). The description of benefits provided through the program establish its educational, yet non-academic, function. As a school activity, CCISD is prohibited from denying Plaintiff's participation.

        WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment and for such other and further relief to which Plaintiff may be entitled.

                            Respectfully submitted,


                            Les Cassidy
                            1020 Bank of America Center North
                            500 N. Water Street
                            Corpus Christi, Texas  78471
                            361/ 887-2965  office
                            361/ 887-6521  fax

State Bar No.  03979270
Federal I.D. No.  5931
Attorney-in-Charge for Plaintiffs

**Page 14**

CVsPDF – www.fastio.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded by U.S. Certified Mail, return receipt requested this 23 day of October, 2000, to:

Sandra Sterba-Boatwright
Meredith, Donnell, & Abernathy
1500 One Shoreline Plaza, North Tower
Corpus Christi, Texas  78401

Andrew L. Quittner
Assistant City Attorney
P.O. Box 9277
Corpus Christi, Texas  78469-9277

Les Cassidy

Page 15

# EXHIBITS
# NOT
# IMAGED

CVISPDF – www.fesino.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

CHRISTOPHER E.P., b/n/f          §
ROSE V.                          §
       Plaintiffs,              §
                                 §
vs.                              §          CIVIL ACTION NO: C-00-021
                                 §
CORPUS CHRISTI INDEPENDENT       §
SCHOOL DISTRICT AND CITY OF      §
CORPUS CHRISTI, TEXAS            §
       Defendants.              §

## ORDER

     The Corpus Christi Independent School District's Motion for Summary Judgment is

DENIED.


Signed this _____ day of _____, 2000.


                            _____

                            UNITED STATES DISTRICT JUDGE