IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
ENTERED

**NOV 3 0 2000**

Michael N. Milby, Clerk of Court

*49.*

| | |
|---|---|
| CHRISTOPHER E.P., b/n/f | § |
| ROSE V., | § |
|     Plaintiff, | § |
| | § |
| vs. | § |
| | § |
| CORPUS CHRISTI INDEPENDENT | § |
| SCHOOL DISTRICT AND THE CITY | § |
| OF CORPUS CHRISTI, TEXAS, | § |
|     Defendants. | § |

CIVIL ACTION NO. C-00-021

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

Came on for consideration the motions for summary judgment by the City of Corpus Christi, Texas (the "City"), the Corpus Christi Independent School District ("CCISD"), and the Plaintiff's responses thereto. Having considered the motions, responses, and summary judgment evidence, the Court denies the motions in part and grants them in part.

## I. JURISDICTION

This action is brought under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401, *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* The Court has jurisdiction over these federal law claims pursuant to 28 U.S.C. § 1331; in addition, the Court has

jurisdiction over Plaintiff's IDEA claim pursuant to 20 U.S.C.
§ 1415(i)(3).

## II. FACTS

The basic facts are undisputed.  Plaintiff Christopher E.P.
is a twelve year old elementary student attending school in the
Corpus Christi Independent School District (CCISD).  Plaintiff
brings this suit by and through his mother, Rose V.  Plaintiff
suffers from cri-du-chat syndrome and is confined to a wheel
chair.[1]  Plaintiff requires and receives the aid of a
paraprofessional during the school day.

The City of Corpus Christi, through its Parks and Recreation
Department, operates an after school program known as the
"Latchkey Program."  This program provides after-school
supervision to children whose parents are not home when school
lets out.  The CCISD provides access to buildings and janitorial
services for the Latchkey Program through a contract with the
city.  Funding to pay the fees and salaries of program staff is

---

[1]Cri-du-chat syndrome is a "rare congenital disorder caused
by partial deletion of the short arm of chromosome 5,
characterized by mental retardation, mild facial abnormalities,
anomalies of dermal ridge patterns (fingerprints, palm prints,
and footprints), heart malformations, a failure to thrive, and a
high-pitched, wailing cry likened to that of a cat (the name is
French for 'cat cry')."  Encyclopedia Britannica web site
(www.britannica.com).

provided entirely by enrollment fees, although the Corpus Christi Independent School District does not charge the City for the facilities and services it provides. (Plaintiff's Response to City's Motion at Exhibit 2.)

The City has certain standard minimum eligibility requirements for a child who wishes to enroll in the Latchkey Program. Among those requirements are that the child have at a minimum the mental and physical abilities of a five-year-old; that the child be able to take responsibility for and handle his/her own personal hygiene; that the child be able to communicate with the staff supervisor; and that the child be able to administer his/her own medication. (City's Motion at Exhibit 4.)

Plaintiff has requested enrollment in the Latchkey Program, and has requested that the City provide paraprofessional services necessary for him to participate. The City has denied the request, but has offered to allow Plaintiff to participate in the program if Plaintiff provides, at his own expense, a paraprofessional to assist him with medication and hygiene needs.

Plaintiff has sued under the Rehabilitation Act, the ADA, and the IDEA, seeking injunctive relief to compel the Defendants to admit him into the Latchkey program and to provide him with

3

CMsPDF - www.fesna.com

paraprofessional assistance during his participation in the
program, as well as damages to compensate for the costs of after-
school care that have been expended to date.

## III. DISCUSSION

### A.  Standard for Summary Judgment

Summary judgment is proper if "the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute
about a material fact is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct.
2505, 2510 (1986); Judwin Properties, Inc. v. U.S. Fire Ins. Co.,
973 F.2d 432, 435 (5th Cir. 1992).  The substantive law
identifies which facts are material.  Anderson, 477 U.S. at 248,
106 S. Ct. at 2510; Ellison v. Software Spectrum, Inc., 85 F.3d
187, 189 (5th Cir. 1996).  If the nonmovant bears the burden of
proof, the moving party may discharge its burden by showing that
there is an absence of evidence to support the nonmovant's case.
Celotex Corp., 477 U.S. at 325, 106 S. Ct. at 2553; Ocean Energy
II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th

4

Cir. 1989). Once the moving party has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In this case, the Plaintiff bears the burden of proof and, if the City has pointed out an absence of evidence regarding a particular issue, the Plaintiff must come forward with evidence of specific facts showing that there is a genuine issue for trial.

### B.  City's Motion for Summary Judgment

#### 1.  Rehabilitation Act of 1973

The Rehabilitation Act of 1973 prohibits discrimination against "qualified individuals with a disability" in the provision of any program or activity receiving Federal financial assistance. 29 U.S.C. § 794. To sustain a claim under the Rehabilitation Act, a plaintiff must show that (a) he is a handicapped individual; (b) that he is otherwise qualified for participation in a program or activity; (c) that the program receives federal financial assistance; and (d) that he was denied benefits of or subject to discrimination under the program. Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368 (3rd Cir. 1991); Mallet v. Wisconsin Division of Vocational Rehabilitation, 130 F.3d 1245 (7th Cir. 1997).

5

A "program or activity" is defined to include the operations of an instrumentality of a State. 29 U.S.C. § 794(b)(1)(A). An "otherwise qualified individual" is one who is able to meet the requirements of a program in spite of his handicap, with or without a reasonable accommodation by the defendant. *See* <u>Doe v. Woodford County Bd. of Educ.</u>, 213 F.3d 921, 925 (6th Cir. 2000). Where a public entity provides a benefit, the benefit itself cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made. <u>Alexander v. Choate</u>, 469 U.S. 287, 301, 105 S.Ct. 712, 720 (1985); *see also* <u>Marvin H. v. Austin Independent School Dist.</u>, 714 F.2d 1348, 1356 (5th Cir. 1983) (allegation that defendant failed to make reasonable accommodations for handicapped individual states claim under the Rehabilitation Act). Defendants may demonstrate as an affirmative defense that a requested accommodation would constitute an undue burden. 29 U.S.C. § 794a(a)(1); <u>Gorman v. Bartch</u>, 152 F.3d 907, 911 (8th Cir. 1998); <u>Timothy H. v. Cedar Rapids Community School Dist.</u>, 178 F.3d 968, 971 (8th Cir. 1999). The burden of proving the

6

defense of undue burden is upon the defendant.  <u>Ali v. City of</u>
<u>Clearwater</u>, 915 F.Supp. 1231, 1240 (M.D. Fla. 1996), *affirmed* 139
F.3d 956 (11th Cir. 1998).

There is no dispute that Plaintiff is disabled within the
meaning of the statute or that he was denied participation in the
Latchkey program because his disability precludes him from
meeting the requirements of the program, without some reasonable
accommodation.  The City does argue, however, that the program
does not receive financial assistance and that it made an offer
of reasonable accommodation to include Plaintiff within the
program, which Plaintiff rejected.  Moreover, the City asserts
that the alternative accommodation suggested by the Plaintiff
would constitute an undue burden on the City.

<u>(a)   Federal Financial Assistance</u>

The City argues that the Latchkey program is entirely funded
through tuition payments by parents and, therefore, does not
receive federal financial assistance.  The City ignores, however,
the expansive scope of the "federal financial assistance"
requirement of the Rehabilitation Act.

Section 794(b) of the Act defines the term "program or
activity" to include <u>all</u> the operations of an instrumentality of
a State.  29 U.S.C. § 794(b)(1)(A).  This means that the

7

Rehabilitation Act applies to any program or activity of a municipality that receives federal assistance, whether or not that assistance is used for the specific program or activity. *See* Bonner v. Arizona Dept. of Corrections, 714 F.Supp. 420, 422 (D. Arizona 1989); Leake v. Long Island Jewish Medical Center, 869 F.2d 130, 131 (2nd Cir. 1989); *see also* Cason v. Rochester Housing Authority, 748 F.Supp. 1002, 1006-1007 (W.D.N.Y. 1990); Gorman v. Bishop, 919 F.Supp. 326, 331 (W.D. Mo. 1996).

Thus, if the City receives any federal financial assistance, it is bound by the Rehabilitation Act not to discriminate against qualified, disabled individuals in any of its services. The City asserts only that the Latchkey Program does not receive any federal funds. It does not state whether or not the City receives federal funds for some other purpose. Nor has the City pointed to the absence of evidence in the record regarding whether it receives federal funding. The Court therefore concludes that a genuine issue of material fact exists as to whether the City receives federal financial assistance within the meaning of the Rehabilitation Act.

8

## (b)   Department of Education Regulations

The City also argues that the Latchkey Program is not covered by the Rehabilitation Act because it is not an "education program" within the meaning of 34 C.F.R. Part 104. (City's Motion at 9.) But application of the Rehabilitation Act is not limited only to those programs that fall under Title 34 of the Code of Federal Regulations. *See, e.g.*, Bonner v. Arizona Dept. of Corrections, *supra* (applying Rehabilitation Act to prison services); Gorman v. Bishop, *supra* (applying Rehabilitation Act to transportation of disabled arrestees in police vehicles); Innovative Health Systems v. City of White Plains, 931 F. Supp. 222 (S.D.N.Y. 1996) (applying Rehabilitation Act to zoning decisions by municipality that received federal funds). Rather, the Rehabilitation Act applies to any "program or activity" by an instrumentality of a state that receives "federal financial assistance." 29 U.S.C. § 794. Certainly, the City will be governed by the regulations of any federal agency that provides it with funding, and those regulations will be relevant to the outcome of this lawsuit. But as explained above, the Court does not have before it any evidence regarding the City's receipt of federal financial assistance.

9

The Court also notes that the Latchkey program is jointly provided by the City and the CCISD.  To the extent that the CCISD receives Department of Education funds, *CCISD* must abide by the Department's regulations.  CCISD's obligations under the regulations are addressed more fully below in the portion of this order addressing CCISD's motion for summary judgment. Nevertheless, the Court notes that, contrary to the City's contention, the regulations do not apply only to "education programs" (the regulations do not define the term "education program"), but to "nonacademic and extracurricular" services and activities as well.  34 C.F.R. § 104.37.  The terms "nonacademic and extracurricular" also are not defined in the regulations, but the Court finds that they include programs such as the Latchkey Program.[2]  Importantly, the Office for Civil Rights of the Department of Education found that a very similar after school program was a "nonacademic program" within the meaning of 34

---

[2]The Court is not convinced that the Latchkey Program is not an "education program", in any case; the City's brochure touts the program as providing "basic survival skills necessary in today's society" and "quality recreational experiences" that "enhance the child's leisure skills, including art, drama, games. . . ." (City's Motion, Exhibit 4.)  There is no indication in the regulations, nor can any case law be found, that the term "education" in the regulations excludes the teaching of "basic survival" and other skills.

C.F.R § 104.37.  <u>Conejo Valley (CA) Unified Sch. Dist.</u>, 23 IDELR

448 (OCR 1995).  An agency's interpretation of its own

regulations is entitled to substantial deference by this Court.

<u>Girling Health Care, Inc. v. Shalala</u>, 85 F.3d 211, 215 (5th Cir.

1996).  Finally, the regulations prohibit discrimination against

disabled individuals in the operation of day care programs.  28

C.F.R. § 104.38; *see also* <u>Conejo Valley</u>, *supra*.

<u>(c)   Reasonable Accommodation</u>

The Plaintiff bears the burden of showing as part of his or

her prima facie case that he could participate in the program

either without an accommodation or with a specified accommodation

that is reasonable.  *See* <u>Palazzolo v. Galen Hospitals of Texas,</u>

<u>Inc.</u>, 1997 WL 837951, *3 (N.D.Ga. 1997).  "As a general matter, a

reasonable accommodation is one employing a method of

accommodation that is reasonable in the run of cases, whereas the

undue hardship inquiry focuses on the hardships imposed by the

plaintiff's preferred accommodation in the context of the

particular agency's operations."  <u>Barth v. Gelb</u>, 2 F.3d 1180,

1187, 303 U.S.App.D.C. 211, 218 (D.C. Cir. 1993), *cert. denied*

511 U.S. 1030, 114 S. Ct. 1538 (1994); *see also* <u>Riel v.</u>

<u>Electronic Data Systems</u>, 99 F.3d 678, 683 (5th Cir. 1996)

(dealing with Rehabilitation Act and ADA claims in employment context).

The City argues that it made an offer of reasonable accommodation so that the Plaintiff could participate in the Latchkey Program. (City's Motion at 9.) The City contends (and it is not disputed) that the Plaintiff was given the option of participating in the program if his family provided, at his family's expense, a caretaker to assist him. (City's Motion, Exhibit 1 at 13-14.) Plaintiff's family refused to accept this compromise, instead insisting that the City provide a paraprofessional, at the City's expense, to attend to Plaintiff's needs. (Id.)

The Plaintiff requires assistance in administering his medication and in using the bathroom. (Id. at 8-10.) The City contends that providing a paraprofessional would be an undue burden. (See City's Motion at 11-12.) The Court concludes, however, that a genuine issue of material fact exists as to whether the accommodation proposed by Plaintiff constitutes an "undue burden" upon the operations of the Latchkey Program.

First, the Plaintiff has produced some evidence that a paraprofessional could be provided at a cost to the City of $7.00 per hour. (Plaintiff's Response to City's Motion at Exhibit 5.)

This paraprofessional need not be solely dedicated to Plaintiff's needs, but could also participate in the program the same as other workers. (City's Motion, Exhibit 1 at page 9.)  Although the extra expense certainly would be some burden on the City, the issue is whether it would be an *undue* burden.  The City's evidence shows, however, that the City has not actually calculated what would be the cost of providing additional supervision for children with special medical needs.  (City's Motion, Exhibit 2 at 43; Plaintiff's Response to City's Motion at Exhibit 8.)  This evidence suggests that the City has not considered how burdensome the Plaintiff's requested accommodation would be.

Moreover, although the City points out that the costs of the program are borne by the parents, the City's evidence presents a more complicated picture.  The enrollment fee are set at an amount that allows the City to provide enrollment to some needy participants free of charge or at a reduced fee.  (City's Motion, Exhibit 3 at page 2.)  Thus, the fees paid by a participant does not reflect a pro-rata share of the costs of providing the program to that participant; rather, some participants in effect pay the cost of providing the program to needier participants.

13

(*See* id.)   In addition, the physical facilities, utilities, and janitorial services are provided to the program, free of charge, by CCISD.   (Plaintiff's Response to City's Motion at Exhibit 2.) A trier of fact could find that the City could adjust fees to provide assistance to Plaintiff without rendering it infeasible to provide the program to other participants.

Plaintiff has shown that some accommodation can be made to allow Plaintiff to participate in the Latchkey Program.   The Court notes that the City has acknowledged that, if the expense were borne by Plaintiff, it would allow Plaintiff to provide his own paraprofessional to assist him during the program.   (*See* City's Motion at 11-12).   The Court therefore concludes that Plaintiff's proposed accommodation would not constitute an unwarranted disruption in the operation of the program, and that Plaintiff's accommodation is, therefore, reasonable within the context of the program.   The City has not borne its burden of showing that there is no genuine issue of material fact as to whether the accommodation would constitute an undue expense.

### 2.   Americans with Disabilities Act

To establish a violation of Title II of the Americans with Disabilities Act, a plaintiff must show that: (1) he or she is a qualified individual within the meaning of the Act, (2) he or she

14

is being excluded from participation in, or being denied benefits
of, services, programs, or activities for which the defendant is
responsible or are otherwise be discriminated against by the
defendant, and (3) such exclusion, denial of benefits, or
discrimination is by reason of the disability.  Lightbourn v.
County of El Paso, Texas, 118 F.3d. 421 (5th Cir. 1997).

Analysis of claims under the Rehabilitation Act of 1973 and
the Americans with Disabilities Act differs very little, and
precedent under one statute generally is applicable to the other.
See McPherson v. Michigan High School Athletic Ass'n, Inc., 119
F.3d 453, 459-460 (6th Cir. 1997).  The principal distinction
between the two statutes is that coverage under the
Rehabilitation Act is limited to entities receiving federal
financial assistance, while the ADA's reach extends to purely
private entities.  Id.  As shown above, Plaintiff meets all three
of the requirements.

Nevertheless, the City's obligations under the ADA also are
governed by regulations promulgated by the U.S. Department of
Justice.  See 28 C.F.R. Part 35.  The regulations are promulgated
by the Department of Justice pursuant to a mandate in the Act
itself.  42 U.S.C. § 12134(a).  These regulations must be given

legislative and hence controlling weight unless they are arbitrary, capricious, or clearly contrary to the statute. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782 (1984); *see also* Does 1-5 v. Chandler, 83 F.3d 1150, 1153 (9th Cir. 1996) (*citing* United States v. Morton, 467 U.S. 822, 834, 104 S. Ct. 2769, 2776 (1984)). Interpretations by the promulgating agency of its own regulations are entitled to substantial deference. Girling Health Care, Inc. v. Shalala, *supra*. The Court concludes that the Department of Education's interpretations of these regulations also are entitled to deference, because the Justice Department named the DOE a "designated agency" for purposes of implementing the enforcement procedures under the regulations with respect to "programs, services, and regulatory activities relating to the operation of elementary and secondary education systems and institutions, institutions of higher education and vocational education (other than schools of medicine, dentistry, nursing, and other health-related schools), and libraries." 28 C.F.R. § 35.190(b)(2).

The regulations provide that a public entity is not required to "provide to individuals with disabilities personal devices

16

. . . or services of a personal nature including assistance in

. . . toileting." 28 C.F.R. § 35.135.  The City argues that

under this regulation, it cannot legally be compelled to

acquiesce to Plaintiff's requested accommodation.

At least one Court has recognized that, where a disabled

person has no other means of obtaining personal devices, the

regulation does not apply.  *See* <u>Purcell v. Pennsylvania</u>

<u>Department of Correction</u>, 1998 WL 10236 *8-9 (E.D. Pa. 1998).

The Court also notes that § 35.135 is almost identical to the

Department of Justice's regulation at 28 C.F.R. § 36.306, which

deals with requirements imposed on public accommodations.  The

agency's comments to that section note that "Of course, if

personal services are customarily provided to the customers or

clients of a public accommodation, e.g., in a hospital or senior

citizen center, then these personal services should also be

provided to persons with disabilities using the public

accommodation."  28 C.F.R. Pt. 36, App. B.

Both <u>Purcell</u> and the comments are instructive in

demonstrating that there are reasonable limits to the clear and

unambiguous reservation at 28 C.F.R. § 35.135.  In other words,

the regulation is not a categorical limit on the reach of the

ADA, but rather is a guideline for determining the extent to

17

which an accommodation may be "reasonable." In some contexts –
such as prisons, as shown by <u>Purcell</u>, and in nursing homes and
similar facilities, as demonstrated by the comments to § 36.306 –
it may be "reasonable" to require an entity to provide personal
services.

Nevertheless, the Court finds that Plaintiff cannot rely
upon this interpretation for relief from the harsh effects of
§ 35.135 in the instant case. The justification implicit in the
<u>Purcell</u> decision was that, where a government agency removes from
an individual the ability to provide for himself, the government
must step in and provide for the individual's needs. That
reasoning simply is not applicable in Plaintiff's case.
Additionally, there is no showing, or reason to believe, that the
City's Parks and Recreation Department "customarily" provides
toileting assistance or other personal services to persons who
avail themselves of its programs. Although the Court concludes,
below, that the regulation does not constitute a safe haven for
the school district, the Court can find no authority or precedent
that would allow Plaintiff to circumvent the clear language of
the regulation in his ADA claim. For that reason, the Court
concludes that, as a matter of law, Plaintiff's ADA claim against
the City must fail.

18

### 3. Individuals with Disabilities Education Act

The City contends, and the Plaintiff agrees, that the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*, does not apply to the City.  The Act requires states that accept federal funds to provide disabled children with "free appropriate public education."  20 U.S.C. § 1412.  The Act requires the development of an individualized education program for each child with disabilities, and provides certain procedural safeguards to ensure that their rights are protected.  Id.

The Court agrees that the IDEA does not apply to Plaintiff's action against the City.  There is no showing that the City is an "educational service agency" within the meaning of the act, 20 U.S.C. § 1401(4), or that participation in the Latchkey Program is a necessary component of Plaintiff's individualized education program.  For those reasons, the Court grants the City's motion for summary judgment as to Plaintiff's IDEA claims.

### C. CCISD'S MOTION FOR SUMMARY JUDGMENT

### 1. Rehabilitation Act of 1973

CCISD, like the City, contends that the Latchkey Program does not receive federal funding.  (CCISD's Motion at 5.)  CCISD also argues that, because it does not administer the Latchkey Program, it could not be held liable for any discrimination in

19

which the Program might engage. (Id.) The Court concludes that, as a recipient of federal funds, CCISD is bound by the Rehabilitation Act, and regulations by the Department of Education compel CCISD to undertake to remedy any discrimination in any program to which it provides substantial assistance.

The Court already has explained above that the Latchkey Program itself need not receive federal financial assistance, as long as the public entity providing the program receives federal funding. The summary judgment evidence demonstrates that CCISD does receive federal funding. (Plaintiff's Response to CCISD's Motion at Exhibit 11.) The record does not indicate which federal agency provides this funding to CCISD, however.

Assuming that at trial it is shown that CCISD receives funds from the Department of Education, then that agency's regulations prohibit CCISD from participating in the Latchkey Program if the program discriminates against participants on the basis of handicap, notwithstanding CCISD's protestation that it does not administer the program. *See* 34 C.F.R. § 104.4(b). That subsection provides that a recipient of federal funds may not, "in providing any aid, benefit, or service, may not, directly or through *contractual* . . . arrangements (v) Aid or perpetuate

20

discrimination against a qualified handicapped person by
providing significant assistance to an agency, organization or
person that discriminates on the basis of handicap . . . or (vii)
Otherwise limit a qualified handicapped person in the enjoyment
of any right, privilege, advantage, or opportunity enjoyed by
others receiving an aid, benefit, or service." 34 C.F.R. §
104.4(b)(1)(v) and (vii) (emphasis supplied). CCISD provides
facilities and other support to the Latchkey Program via a
contract with the City. (Plaintiff's Response to CCISD's Motion
at Exhibit 2.) The regulations prohibit CCISD from participating
in the Latchkey Program if the program discriminates in violation
of the standards established in the Rehabilitation Act. *See*
Irvine (CA) Unified Sch. Dist., 19 IDELR 883 (OCR 1993) (school
district would violate DOE regulations by providing facilities
for after school program, operated by private parent-teacher
organization and funded by participants' fees, that discriminated
against disabled students).

As long as CCISD receives federal financial assistance,
which is not contested, its participation in the Latchkey Program
is governed by the requirements of the Rehabilitation Act, and it
may be liable for discrimination against disabled students in any
program for which CCISD provides "substantial assistance." The

21

Court concludes that there is no genuine issue of material fact as to whether CCISD is a recipient of federal funds, but there is an issue as to whether CCISD receives those funds from the Department of Education; alternatively, if CCISD receives those funds from some other agency, then the Court and parties must determine whether the regulations of that agency compel CCISD to remedy discrimination against disabled students in the Latchkey Program.

### 2. Americans with Disabilities Act

CCISD asserts that it cannot be liable for any discrimination under the ADA because it does not provide or make available the Latchkey Program.  (CCISD's Motion at 4.)   The Department of Justice's regulations state that they apply to "all services, programs, and activities *provided or made available* by public entities."   28 C.F.R. § 35.102 (emphasis supplied). Although no case can be found that defines the term "provided or made available", the regulations themselves provide considerable guidance.  As is the case with the Department of Education's regulations, the DOJ's regulations prohibit a public entity from "providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public

22

entity's program." 28 C.F.R. § 35.130(b)(1)(v). Thus, whether CCISD actually administers or provides the program directly is not dispositive.

As noted above, the regulations also specify that they do "not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs; individually prescribed devices, such as prescription eyeglasses or hearing aids; readers for personal use or study; or services of a personal nature including assistance in eating, toileting, or dressing." 28 C.F.R. § 35.135. Yet the Court finds compelling the fact that the Department of Education, in addressing claims of discrimination under the ADA in programs similar to the Latchkey Program, has found that the ADA requires the provision of assistance to disabled students. *See* Conejo Valley (CA) Unified Sch. Dist., 23 IDELR 448 (OCR 1995); Irvine (CA) Unified Sch. Dist., 19 IDELR 883 (OCR 1993). The Irvine opinion is particularly instructive, because that case involved a program funded by participants' fees, operated by a private entity, for which the school district provided only playing fields, classrooms, and some publicity. The OCR found that it did not have jurisdiction over the private organization, because the organization did not receive federal financial assistance. But

the OCR found that the school district's participation
constituted "significant assistance" for purposes of 34 C.F.R.
104.4(b)(1)(v).  The OCR also found that, by not admitting the
complainant's child into the program (because the child required
trained personnel to assist in monitoring his blood-sugar level
and in administering medications), and by not providing trained
personnel, the private organization discriminated against the
student.  The OCR then concluded that it was a violation of
regulations implementing both the Rehabilitation Act *and the ADA*
to provide substantial assistance to a program that discriminated
against qualified disabled students.[3]

The OCR did not address directly the exclusion of "personal
devices" and "services" in the DOJ regulations.  Nevertheless, it
is clear that, in the context of programs for children, the OCR
does not consider the exclusion to apply.[4]  It is possible that
the OCR considers personal assistance to be consonant with the

_____

[3]The remedial action negotiated by the OCR in the Irvine
case may be less than optimal, from Plaintiff's standpoint.  The
school district merely agreed not to provide any further
"substantial assistance" to the after-school program unless the
private organization agreed to provide an attendant for the
student.

[4]The pertinent regulation existed at the time of the Irvine
decision, having become effective in January of 1992.  *See* 56 FR
35716 (26 Jul. 1991).

24

nature of children's programming.  It also is possible that the

OCR takes into account the fact that, in providing special

educational services to children, school districts "customarily"

provide those services, and thus are not protected by the

regulation.  *Cf*. OCR Senior Staff Memorandum, 19 IDELR 859 (OCR

1992) (§ 35.135 "serves as a limitation on all of the

requirements of Title II" but "would not, however, lessen the

obligation of recipients to provide these services when they are

necessary to provide a free appropriate education.").

Whatever the reasoning, the Court accepts the OCR's implicit

interpretation, and concludes that, notwithstanding the

regulation at 28 C.F.R. § 35.135, it would violate the ADA for

CCISD to provide "substantial assistance" to the Latchkey Program

if the program discriminates against disabled individuals by not

providing them with reasonable accommodation to allow them to

participate in the program.  Because the Court has concluded

above that there is a genuine issue of material fact as to

whether the accommodation requested by Plaintiff is reasonable or

would constitute an undue burden on the Latchkey Program, the

Court finds that CCISD's summary judgment motion as to the ADA

claim must fail.

### 3.   Individuals with Disabilities Education Act

CCISD argues that Plaintiff cannot sustain a claim under the IDEA because the statute does not apply to an after-school program.  Plaintiff has not responded to CCISD's summary judgment motion with respect to the IDEA.

Under the IDEA, the federal government provides states with funds "for the education of children with disabilities, guaranteeing disabled children between the ages of three and twenty-one access to a free, appropriate, public education (FAPE)."  Erickson v. Albuquerque Pub. Schs., 199 F.3d 1116, 1118 (10th Cir.1999).  To receive federal funding, states must follow the IDEA's regulations, including identifying, locating, and evaluating children residing in the State who are disabled and "who are in need of special education and related services." 20 U.S.C. § 1412(3)(A).  The IDEA defines a "free appropriate public education" as "special education and related services" that: "(A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title."

26

20 U.S.C. § 1401(8); *see also* <u>O'Hayre v. Board of Educ. for
Jefferson County School Dist. R-1</u>,109 F.Supp.2d 1284, 1291 (D.
Colorado 2000).

The Fifth Circuit has ruled, in a case with substantially
different facts, that where a school district offers a disabled
child an appropriate "individualized education program", the
district is not required to provide services (such as a sign-
language interpreter) to the child when he enrolls in a private
school.   *See* <u>Cefalu v. East Baton Rouge Parish School Board</u>, 117
F.3d 231 (5th Cir. 1997).   Although not on point with the instant
case, the decision suggests that the limit of a school district's
responsibility is in devising and providing a disabled student
with an appropriate individualized education program; beyond
that, the IDEA imposes no further obligation.

No party here complains that Plaintiff is not receiving an
appropriate education from CCISD or the City.   Rather, the
essence of Plaintiff's claim is that, if CCISD provides (albeit
indirectly) programming to some students, then the IDEA requires
CCISD to provide the same programming to Plaintiff.   But the IDEA
is not so much concerned with discrimination in the provision of
services, but rather with ensuring that states receiving federal

27

funds make affirmative efforts to guarantee that students with
special needs are provided with an appropriate education.  The
Court concludes that so long as CCISD provides Plaintiff with an
individualized educational program and related services
appropriate to his special needs, it is not necessarily required
– under the IDEA – to ensure that he enjoys the same access to
every program that other students may have.  As one court has
noted, "In the education field, the Rehabilitation Act
complements the IDEA. . . Whereas the latter authorit[y]
require[s] federally funded State and local educational agencies
to provide special education and related services to students who
meet specified eligibility criteria, § 504 of the Rehabilitation
Act prohibits such agencies from discriminating against students
with disabilities."  <u>J.D. ex rel. J.D. v. Pawlet School Dist.</u>,
224 F.3d 60, 70 (2nd Cir. 2000).  Plaintiff does not claim that
the CCISD has failed to provide him with special education
services; in fact, Plaintiff affirmatively states as much.
(Plaintiff's Response to CCISD's Motion at 1-2.)

The reasoning is bolstered by the fact that the statute
provides a right of action to a "party aggrieved by the findings
and decision" by school officials or an administrative agency
under the Act.  <i>See</i> 20 U.S.C. § 1415(i)(2).  "Accordingly, the

28

right to bring a Federal suit, under the IDEA, extends only to
those persons who are aggrieved by a final agency action."
Moubry By and Through Moubry v. Independent School Dist. No. 696
(Ely), 951 F.Supp. 867, 883 (D. Minn. 1996).  The agency actions
contemplated under the IDEA are those that involve the
identification of disabled students, the development of an
individualized education plan, and the provision of a free
appropriate public education.  Plaintiff is not challenging the
special education services provided him by CCISD or any decision
regarding his placement in those services.  The Court thus
concludes that Plaintiff's IDEA claim must fail as a matter of
law.  The Court's decision does not leave Plaintiff without
recourse, however, because CCISD still may be liable under the
Rehabilitation Act and the ADA.  Nevertheless, the Court
concludes that CCISD is entitled to summary judgment as a matter
of law as to Plaintiff's IDEA claim.

## IV. CONCLUSIONS

     For the reasons stated above, the Court DENIES the motions
for summary judgment by the City and CCISD as to Plaintiff's
claims under the Rehabilitation Act of 1973; the Court GRANTS
both defendants' motions for summary judgment as to Plaintiff's
IDEA claims; the Court GRANTS the City's motions with respect to

Plaintiff's ADA claims; and the Court DENIES CCISD's motion with respect to Plaintiff's ADA claim.

Signed this _29th_ day of November 2000.

JANIS GRAHAM JACK
UNITED STATES DISTRICT JUDGE

30